**BI–RITE OIL COMPANY, INC., Plaintiff–Appellant,**

**v.**

**INDIANA FARM BUREAU COOPERATIVE ASSOCIATION, INC., Decatur County Farm Bureau Cooperative Association, Inc., Noble–Whitley Farm Bureau Cooperative Association, Inc., Defendants–Appellees.**

No. 89–2864.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1990.

Decided July 26, 1990.

Corinne Finnerty, McConnell & Finnerty, North Vernon, Ind., for plaintiff-appellant.

Thomas L. Davis, Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., Dean Dobbins, Greenfield, Ind., Richard M. Hardy, Fishers, Ind., for defendants-appellees.

Before CUMMINGS and KANNE, Circuit Judges, and SNEED, Senior Circuit Judge.*

CUMMINGS, Circuit Judge.

Plaintiff Bi–Rite Oil Company ("Bi–Rite") operates seven gasoline service stations in various Indiana cities. Defendant Indiana Farm Bureau Cooperative Association, Inc. ("Farm Bureau") is owned by a number of cooperatives including defendants Decatur County Farm Bureau Cooperative Association ("Decatur") and Noble–Whitley Farm Bureau Cooperative Association ("Noble–Whitley").

Farm Bureau owns and operates a petroleum refinery in Mt. Vernon, Indiana. In 1983, the last year Farm Bureau and Bi–Rite did business together, Farm Bureau's refinery produced 21,600 barrels per day compared to the total refinery capacity in Indiana of 466,000 barrels per day. The principal purpose of the Farm Bureau re-

---

* The Honorable Joseph T. Sneed, Senior Circuit Judge of the Ninth Circuit, is sitting by designa- tion.

finery is to ensure a steady supply of fuel for its farmer-members. In 1981 Farm Bureau was looking for outside customers to purchase its surplus product. In July 1982 Farm Bureau agreed to sell blended gasoline, which included 10% alcohol, to Bi-Rite at a discount. Rather than giving Bi-Rite a long-term agreement, in November 1982 Farm Bureau executed a 30-day memorandum of understanding with Bi-Rite concerning price, quantity, and terms. This memorandum was extended and continued in effect until March 1983, when Bi-Rite refused to pay for $632,000 worth of gasoline that it had ordered and accepted from Farm Bureau. Shortly thereafter Farm Bureau stopped supplying gasoline to Bi-Rite. Bi-Rite admitted that the unpaid $632,000 was the reason for the stoppage. App. 116, 140. Nevertheless in October 1983 Bi-Rite filed a federal complaint against Farm Bureau, Decatur, and Huntington County Cooperative Association, Inc., alleging violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and similar Indiana law provisions and seeking damages and injunctive relief. Noble-Whitley was substituted for Huntington as a defendant in December 1983. A second amended complaint was filed in October 1987.

According to the final complaint Bi-Rite was cut off by Farm Bureau because it was a price-cutter not willing to maintain the higher consumer prices charged by Decatur and Noble-Whitley. Bi-Rite alleged that those defendants were in a conspiracy with Farm Bureau to stabilize the retail price of gasoline in violation of Section 1 of the Sherman Act and equivalent Indiana law provisions. Bi-Rite also alleged that the defendants had conspired to monopolize the pertinent market in violation of Section 2 of the Sherman Act and similar Indiana Code sections. Finally, Bi-Rite alleged that the defendants conspired to compel it to cease doing business in violation of Indiana Code Section 24-1-4-1.

The district judge handed down a well-reasoned 13-page opinion in July 1989, holding that defendants were entitled to summary judgment. 720 F.Supp. 1363 (S.D.Ind.1989). We affirm because any vertical price restraint here was not *per se* illegal or in any event unreasonable under Section 1 of the Sherman Act and because no violation of other statutory provisions was shown.

### Price-Fixing

Apart from a narrow band of price-fixing conduct which has been held to be *per se* illegal, in order to establish liability under Section 1 of the Sherman Act a plaintiff must demonstrate that the defendants conspired to achieve an unlawful objective and that the resulting restraint of trade was unreasonable. 15 U.S.C. § 1; *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1470-71, 79 L.Ed.2d 775; *Business Electronics v. Sharp Electronics*, 485 U.S. 717, 723, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808. As to the first of these elements, Bi-Rite conceded that Farm Bureau decided to terminate its relationship with Bi-Rite because of the unpaid $632,000 debt and not because of a conspiracy among the defendants. Nevertheless, Judge Barker held that the plaintiff's allegations that Decatur and Noble-Whitley had complained to Farm Bureau about Bi-Rite's retail prices coupled with various other allegations raised sufficient evidence of concerted activity to withstand a motion for summary judgment on this element.[1] On the second element, the unreasonableness of the restraint, Judge Barker found that Bi-Rite was unable to present a genuine issue of material fact. She therefore granted summary judgment in favor of the defendants. We review this determination *de novo*. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir.1989).

The plaintiff contends on appeal that it should not be required to demonstrate the unreasonableness of the defendants' actions since the defendants allegedly engaged in a vertical price restraint that is *per se* illegal under Section 1 of the Sherman Act. This theory was recently rejected in *Business Electronics*, where it was alleged that Sharp Electronics and its

---

1. The propriety of that holding is not before us and we express no opinion on it.

retail customer Hardwell engaged in an agreement to terminate Business Electronics in favor of another dealer because Business Electronics was a price-cutter. The Supreme Court held that such an agreement was not *per se* illegal.[2] The Court affirmed the Fifth Circuit's holding that a vertical agreement between a manufacturer and a dealer to terminate a second dealer could not be *per se* illegal "without a further agreement on the price or price levels to be charged by the remaining dealer." *Business Electronics*, 485 U.S. at 726–27, 108 S.Ct. at 1520–21. Here, as in *Business Electronics*, no evidence was adduced to show that the three defendants had agreed on the prices to be charged by Decatur and Noble–Whitley. Bi–Rite's reliance on *Monsanto Co. v. Spray–Rite Corp.*, 465 U.S. 752, 104 S.Ct. 1464, is misplaced since in that case there was substantial direct evidence of price agreements, *id.* at 765, 104 S.Ct. at 1471, as well as evidence that the defendants in that case had "an understanding that prices could be maintained, and that price-cutters would be terminated." *Id.* at 768 n. 13, 104 S.Ct. at 1472 n. 13.

While Bi–Rite acknowledges that Farm Bureau did not suggest retail prices to its members, it contends that an attempt to stabilize prices violates Section 1 of the Sherman Act, and it relies on four arguments to show that Farm Bureau and its members agreed to stabilize prices. Each of these arguments was correctly rejected below. First, the district court found that a July 1982 telephone conversation between a representative of Farm Bureau and a representative of Bi–Rite failed to "show that [Farm Bureau] demanded that Bi–Rite charge a certain price or that [Farm Bureau] even suggested a certain price to Bi–Rite and it certainly does not reflect any agreement between [Farm Bureau] and the other defendants." 720 F.Supp. at 1374. Second, it found that member cooperatives' complaints to Farm Bureau about Bi–Rite's

prices were "not indicative of an * * * agreement to set prices." *Id.* Third, the court rejected Bi–Rite's attempt to distinguish *Business Electronics*. Bi–Rite argued that the Court in *Business Electronics* was concerned to protect the ability of dealers to terminate retailers who were expected to provide services to customers but who chose to "freeride" on the services of the dealers' other retailers to support their price cuts. *Business Electronics*, 485 U.S. at 728, 108 S.Ct. at 1521–22. Since Farm Bureau did not require any of its members to provide services to customers, Bi–Rite argued, the concern that led the Court to reject *per se* illegality in *Business Electronics* was absent. The district judge correctly noted that many legitimate factors may lead to a decision to terminate a price-cutter. 720 F.Supp. at 1374. Thus the absence of a potential free-rider problem in this case is not determinative. Finally, the court found that there was insufficient evidence to support Bi–Rite's assertion that the defendants engaged in resale price maintenance. *Id.* at 1374–75.

■ Having rejected Bi–Rite's contention that the defendants' actions were *per se* illegal, Judge Barker applied a rule of reason analysis to determine whether the defendants' actions imposed an unreasonable restraint on competition. Under that analysis the plaintiff must show that the challenged restraint has an adverse impact on competition in the relevant market. *Monsanto*, 465 U.S. at 762, 104 S.Ct. at 1470. Bi–Rite has made no effort to satisfy the rule of reason, relying entirely on its *per se* argument. All parties agree that the relevant product market consists of petroleum products sold at the retail service station level. While Bi–Rite alleges that the geographic market is essentially local, the defendants have defined the geographic market as the petroleum product market of Indiana. Because of its all or

**2.** *World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467 (10th Cir.1985), certiorari denied, 474 U.S. 823, 106 S.Ct. 77, 88 L.Ed.2d 63, on which Bi–Rite heavily relies (Br. 28, 29, 31, 32; Reply Br. 10, 11, 12) antedated *Business Electronics* and is no longer followed in the Tenth Circuit in cases involving refusal to deal with a distributor. See *Westman Commission Co. v. Hobart International, Inc.*, 796 F.2d 1216, 1223–24 (10th Cir.1986), certiorari denied, 486 U.S. 1005, 108 S.Ct. 1728, 100 L.Ed.2d 192, which adopted the rule later followed in *Business Electronics*.

nothing reliance on a *per se* analysis Bi-Rite has not offered any evidence that the geographic market is not statewide. Farm Bureau's refinery had a capacity of 21,670 barrels a day compared to a statewide capacity of 466,000 barrels. Its refinery was one of five in the state. Decatur sold at retail only 167 gallons per day during the July 1982–March 1983 period and Noble–Whitley even less. Accordingly, the district court correctly concluded that the defendants did not have the market power to control output, prices, or competition. 720 F.Supp. at 1376. It follows that any restraint on competition was reasonable and that summary judgment was therefore appropriate under Section 1 of the Sherman Act and the like Indiana law provisions.

## Monopolization

 In addition to the Sherman Act Section 1 charge, Bi–Rite has claimed that the defendants conspired to monopolize the sales of gasoline in the area in question in violation of Section 2 of the Sherman Act and the Indiana Code.[3] Although Bi–Rite terminated its relationship with its prior suppliers when it commenced to do business with Farm Bureau, the district court found Bi–Rite had resumed its relationship with those suppliers after the cut-off by Farm Bureau for failure to pay. Since no long-term contract existed between Farm Bureau and Bi–Rite, there was nothing illegal in Farm Bureau's refusal to continue sales to Bi–Rite after it stopped payment. The court further found that there was nothing illegitimate in Farm Bureau's obtaining a state court judgment ordering Bi–Rite to pay its overdue account to Farm Bureau. That judgment was affirmed by the Indiana Court of Appeals, with the Indiana Supreme Court declining to review it. When Farm Bureau sought execution on the judgment, Bi–Rite filed a Chapter 11 petition in bankruptcy in another state court action, where the Indiana court found there was never a long-term agreement between Bi–Rite and Farm Bureau. This judgment was also affirmed by the Indiana

Court of Appeals, again showing the worthlessness of Bi–Rite's position that such an agreement had been breached for monopolistic reasons.

As the court below held, there was no evidence of defendants' intent to monopolize, nor was there evidence that the defendants' activities had a substantial effect on commerce. Bi–Rite simply failed to show that "the defendants conduct was without legitimate business justification." 720 F.Supp. at 1378. Because the evidence did not permit an inference of an intent to monopolize, summary judgment for the defendants under Section 2 of the Sherman Act and the corresponding portion of the Indiana Code was appropriate.

## Conspiracy to Close Down Bi–Rite

 In addition to the federal and state antitrust law claims discussed above, Bi–Rite also asserted that the defendants conspired to compel it to cease business in violation of Indiana Code 24–1–4–1. We agree with the district court that there was no evidence that the defendants conspired to compel Bi–Rite to go out of business. Indeed after Farm Bureau terminated Bi–Rite as a customer for non-payment of debt, Bi–Rite recommenced business with its former suppliers. There has been no showing that the defendants caused Bi–Rite to file for bankruptcy. As with the other alleged statutory violations, summary judgment for the defendants was warranted on this charge.

Judgment affirmed.

---

**3.** Plaintiff has abandoned its charge that defendants *attempted* to monopolize the relevant market.